125 So.2d 749 (1960)
John G. BARROW, Appellant,
v.
Forace F. HOLLAND, Talmadge Hart, Gordon Granger, S. Brack Cantrell and Don Southwell, composing and constituting the Game and Fresh Water Fish Commission of the State of Florida, Appellees.
Supreme Court of Florida.
December 19, 1960.
*750 Hall, Hartwell & Douglass, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and T. Paine Kelly, Asst. Atty. Gen., for appellees.
THORNAL, Justice.
Appellant Barrow, who was plaintiff below, seeks reversal of a final decree construing Article IV, Section 30, Florida Constitution, F.S.A., and enjoining his operation of a wildlife exhibit.
We are called upon to determine the extent of the authority of respondent Game and Fresh Water Fish Commission under Article IV, Section 30, supra.
Barrow owns a wildlife exhibit in Nassau County. He operates the display of the animals as a tourist attraction. It is admitted that all of the animals are owned by Barrow and are confined on his land. It is also admitted that a large number of the animals are not native to Florida. These were, in fact, born outside of the State and transported into Florida by appellant Barrow or his predecessor. Included in the display are a number of domestic animals such as dogs, cats, and chickens. Likewise included in the display are a number of animals ferae naturae which are native to Florida and include several raccoons, opossums, and skunks. Respondent Commission notified appellant Barrow that unless he obtained from the Commission a permit to operate the exhibit he would have to close the business. Thereafter, a representative of the Commission inspected the exhibit and refused to approve the issuance of a permit. Barrow filed a complaint for a declaratory decree and an injunction against the closing of his business. On final hearing the chancellor had the view that the respondent Commission has the power to regulate the operations of the subject wildlife exhibit; that its rules and regulations were reasonable and enforceable and that the appellant had been properly denied the permit to operate. Reversal of this decree is now sought.
Appellant contends that the respondent Commission has no power to regulate the control of animals which have been reduced to private possession and, particularly, those which are not native to Florida. He further contends that the rule pursuant to which the Commission has ordered the closing of his business is arbitrary and unenforceable because it is lacking in adequate standards to advise him of the necessary requirements for compliance with the rule.
Article IV, Section 30, reads in part as follows:
1. "From and after January 1, 1943, the management, restoration, conservation and regulation of the birds, game, fur bearing animals, and fresh water fish of the State of Florida * * * shall be vested in a Commission to be known as a Game and Fresh Water Fish Commission * * *."
4. "Among the powers granted to the Commission by this Section shall be the power to fix bag limits and to fix open and closed seasons, on a statewide, regional or local basis, as it may find to be appropriate, and to regulate the manner and method of taking, transporting, storing and using birds, game, fur bearing animals, fresh water fish, reptiles, and amphibians."
The chancellor had the view that respondent Commission has the power to regulate and control the acquisition and management of all birds, game, and furbearing animals as well as reptiles and amphibians. In this view it is immaterial whether they are native to Florida or whether they have been reduced to possession and have become private personal property. Under this interpretation the confinement and display of the non-native animals brought into Florida by the appellant *751 Barrow would be subject to regulation and control by the appellee Commission. Likewise, the ownership, confinement and display of dogs, cats, chickens and other household pets would fall under Commission jurisdiction. We think that this construction of the quoted constitutional provisions is too broad. It comprehends powers greater than those intended to be conveyed to the Commission or that have been conveyed by the language of the organic provision.
It is an established rule of constitutional construction that all of the provisions of the Constitution bearing upon a particular subject must be construed in pari materia. No one provision is to be isolated from the others and considered alone. All of the provisions bearing upon a particular subject are to be brought into focus and construed so as to effectuate the overall objectives reflected by the organic document. Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892.
In approving Article IV, Section 30, it was obviously intended to create a governmental agency clothed with power adequate to protect, preserve and promote the fresh water fish and game of the State. The justification for the establishment of such a Commission stems from the State's interest in animals ferae naturae. It is a concept as old as the Common Law that such animals are owned by the State for the benefit of all of the people. This is not in the nature of a private proprietary ownership. It is in the nature of a title in trust with the public the beneficiary. Under this concept the State has the power to regulate the taking of wildlife and its reduction to possession. To the extent that confinement and transportation are related to the basic purpose of protecting, preserving and promoting the wildlife of the State as a public asset then such activities are subject to control and regulation by the appellee Commission. Sylvester v. Tindall, supra; State v. Lee, Fla. 1949, 41 So.2d 662; Bronson v. State, Fla. 1956, 83 So.2d 849.
Once such animals ferae naturae have been legitimately reduced to private control, confinement and possession, they become private property. When this occurs the owner thereof can not be deprived of the use thereof, except in accord with all of the elements of due process which protect one's ownership of private property generally. In other words, once the animals are legitimately removed from their natural condition and are brought into confinement through private ownership, they cease to be a subject of regulation by appellee Commission. State v. Lee, supra.
This rule is even more clearly applicable to non-native wildlife acquired outside of Florida and brought into this State. We find nothing in the quoted constitutional provisions which endow the appellee Commission with the power to regulate the use of purely private property imported into this State even though such property be wildlife acquired in some other state. We do not here hold that the importation, transportation, use or confinement of such property is beyond the police power of the State to control and regulate. We merely hold that such power has not been granted to the appellee Commission. Certainly it could be regulated by the State in the exercise of its police power.
What we have heretofore said leads us to the conclusion that the appellee Commission has been given no power to require that the owner of non-native birds and animals obtain a permit in order to exhibit them in this State. To the extent that the obtaining of a permit might be necessary to regulate and control the taking of Florida wildlife as related to the preservation, protection and promotion thereof, we hold that the respondent Commission has the power to promulgate a regulation with reasonable standards requiring a permit to be obtained. Such standards, however, should be clearly stated in the regulation itself. The issuance of such a permit should not *752 be left to the exercise of arbitrary judgment by the Commission or any of its employees.
The rule which the appellee Commission sought to enforce against appellant Barrow, was Commission Rule 6, which reads as follows:
"The Director may issue permits giving the right to take or to be in possession of wildlife or fresh water fish, or their nest of eggs, for scientific, educational, exhibition, propagation or management purposes. Such permits shall be subject to such terms, conditions, and restrictings as may be prescribed by the Commission, provided that no such permits shall be operative, as to migratory birds unless and until the holder thereof has a permit from the U.S. Fish and Wildlife service permitting the taking, exhibiting, or possession of such birds, their nests or eggs.
"Traveling shows, zoos, or wildlife exhibits, exhibiting wildlife and/or fresh water fish native to Florida, shall be required to secure a permit before entering the State and shall file with the Director localities over the State where they expect to operate at such localities. All such traveling shows, zoos or wildlife exhibits shall be subject to inspection at all times by Wildlife Officers of the Game and Fresh Water Fish Commission and failure to comply with all requirements set out by the Commission, including mistreatment or neglect of such animals, shall be cause for immediate cancellation of permit issued for the operation of the show or exhibit."
Even granting the Commission the power to require a permit for the display of Florida wildlife on exhibit, the quoted rule falls far short of meeting constitutional requirements that it establish standards for the guidance of those members of the public who are affected by it, as well as to govern the agents of the Commission who are required to enforce it. Regulations of this Commission have the force and effect of law. Bronson v. State, supra; Beck v. Game and Fresh Water Fish Commission, 1948, 160 Fla. 1, 33 So.2d 594. It is a well-established rule of constitutional law that an enactment delegating administrative power to an agency of government should define the limits of the power by including in the enactment reasonable standards which enable the affected public to meet the requirements of the enactment. These standards at the same time preclude the exercise of arbitrary power by the enforcement agencies of the government. 1 Florida Law and Practice, "Administrative Law," Section 11; 1 Fla. Jur., "Administrative Law," Section 36.
An agency of government having the power to regulate is not permitted to arrogate to itself or to delegate to its employees the arbitrary power to determine private rights with an unbridled discretion. North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524; Mayer v. Dade County, Fla. 1955, 82 So.2d 513; Drexel et al. v. City of Miami Beach, Fla. 1953, 64 So.2d 317; Robbins v. Webb's Cut Rate Drug Co., 1944, 153 Fla. 822, 16 So.2d 121; Florida Power Corp. v. Pinellas Utility Board, Fla. 1949, 40 So.2d 350.
Reference to Commission Rule 6 quoted above, will reveal that it is totally devoid of any standards to guide an applicant for a permit regarding the requirements precedent to obtaining such a permit. The rule merely authorizes the Director to issue a permit. It further provides that when issued the permit shall be subject to terms and conditions prescribed by the Commission. The rules fail to reveal such terms and conditions.
The instant record reveals the justification for the principle which we here apply. For example, when interrogated as to the criteria employed in making an investigation to determine whether a wildlife exhibitor was eligible for a permit, the Commission inspector replied: "The purpose of *753 these inspections is that the place that is inspected will be a credit to the State of Florida, and not something else." When interrogated as to standards governing the inspectors, the Commission Director replied: "It's very much up to the judgment of the officers * * * whether the requirements are met relative to cleanliness and safety and those items." There was not a specific requirement or standard stipulated in the rules. Everything turned on the reaction of the individual officer as to whether a place was "a credit to the State." This was defined to mean "* * * something that people enjoy and is clean and sanitary and safe, and the animals are treated in a humane fashion, something that would be pleasing to tourists." Because the inspector concluded that appellant's place failed to meet his notions of what would be "a credit to the State" Barrow was ordered out of business.
An agent of the appellee Commission notified appellant that his place of business would be closed if the appellant failed to obtain a permit. The appellant could have read the rules of the Commission backwards and forwards and could not have obtained any information whatsoever as to just what he would have to do to obtain the permit. The only requirement was that he satisfy the Director of the respondent Commission. This in actuality meant that he must satisfy the inspector who checked his place of business. So far as the regulations of the appellee Commission are concerned, the director, acting through the inspector had absolute and unbridled power to decide who should be granted a permit and who should not. This is the type of arbitrary authority that due process prohibits. We hold that the subject rules are defective. They authorize the exercise of arbitrary governmental power measured only by the uncontrolled discretion of the enforcement officer. Therefore, they are unenforceable.
The decree is reversed and the cause is remanded to the chancellor for further proceedings consistent with this opinion.
It is so ordered.
THOMAS, C.J., TERRELL, ROBERTS, DREW and O'CONNELL, JJ., and STURGIS, District Court Judge, concur.