616 So.2d 1209 (1993)
Rondall TOMBLIN and Steve Tomblin, Appellants,
v.
STATE of Florida, Appellee.
Nos. 92-00903, 92-00904.
District Court of Appeal of Florida, Second District.
April 23, 1993.
*1210 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Asst. Public Defender, Bartow, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Brenda S. Taylor and Erica M. Raffel, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Rondall and Steve Tomblin appeal their convictions for grand theft. We reverse.
The facts, cast in a light most favorable to the state, center upon the early morning hours of April 28, 1991. At approximately 2:00 a.m., Officer Justesen of the Florida Game and Freshwater Fish Commission (Commission) stopped the appellants' truck because he suspected that the occupants were unlawfully hunting wild hogs. Four persons were inside  the two appellants, a codefendant named Dewayne Collier, and a passenger who was not charged in this incident. Someone had shone a light from the truck, in violation of a county ordinance, and in the dog box atop the back of the truck was a trussed hog.[1] Officer Justesen let the men go with a warning.
Apparently this warning went unheeded, as the "shining" soon resumed. A second Commission officer, Colson, followed the truck through an area where wild hogs frequently are seen. Upon reaching a gate belonging to the C.R. Melear Corporation (Melear), the truck's brake lights came on and Officer Colson saw figures crossing the road with a hand-held flashlight. Dogs jumped out of the truck. The men's actions suggested to Officer Colson that they had spotted a hog. Once Officers Justesen and Colson stopped the defendants' truck, they could hear the dogs barking and a hog squealing. Rondall Tomblin, the driver of the truck, was still in the vehicle. Officer Justesen located the wounded hog and shot it with his service pistol. Officer Colson instructed Rondall to call his brother and Collier from the woods. When there was no response, the game wardens made arrangements for bloodhounds. The two men then emerged, both unarmed.
Neither of the game wardens was able to determine whether Steve Tomblin or Collier had crossed the fence onto the Melear property. None of the defendants had permission to be on that property. The general manager of Melear testified that there are quite a few hogs on the property, although the company, which is a dairy, does not keep track of the hogs. They eat waste feed that falls from cattle troughs. The company does not deliberately feed the hogs or otherwise care for them, except to worm captured hogs to make them fit for human consumption. Occasionally the company lets people hunt the hogs, or purchase those that have been captured, though most of those taken are trapped or shot by dairy employees. The hogs are not domesticated and are free to leave the property at will.
All three defendants were charged with grand theft, based on the taking of the hog that was put out of its misery by Officer Justesen. Rondall Tomblin was also charged with resisting arrest without violence because he had driven the truck another 200 yards after Officer Colson turned on his blue lights.[2]
*1211 The appellants mount three separate challenges to the grand theft charges. First, they maintain that the hog was not a "commercially farmed animal," thus, at worst, they are guilty of petit theft.
Section 812.014(2)(c)5., Florida Statutes (Supp. 1990), provides:
It is grand theft of the third degree and a felony of the third degree ... if the property stolen is:
... .
5. Any commercially farmed animal, including any animal of the equine, bovine, or swine class, or other grazing animal, and including aquacultural species raised at a permitted aquaculture facility.
The term "commercially farmed" unfortunately invites a certain degree of imaginative speculation. Arguably, it is a felony to seize a chicken from a farm yard, or a tropical fish from a farm pond. Applied to the present case, the statutory language is susceptible to two interpretations. The state concedes that the hog taken by the appellants had not been "commercially farmed." However, they suggest that the definition of grand theft also includes any animal "of the equine, bovine, or swine class." If so, the state did not have to establish that the hog was a commercially farmed animal, or that it had any particular value, but only that it was "of the swine class."
Essentially, the state's construction requires rewriting or editing the existing word order, such that grand theft occurs whenever one steals horses, cattle, swine, or any other animal that might have been, under the facts of a particular case, "commercially farmed." It is axiomatic that penal statutes must be construed strictly in favor of those persons against whom they would operate. Section 775.021(1), Fla. Stat. (1989). Following this "rule of lenity," we conclude that the statute does not unambiguously evince a legislative intent to make the taking of wild hogs a felony.[3]
Second, the appellants assert the state failed to prove that the hog was Melear's property, as charged in the information. If so, then the appellants cannot be convicted even of petit theft. See Shedd v. State, 350 So.2d 1085, 1087 (Fla. 1st DCA 1977), cert. denied, 359 So.2d 1219 (Fla. 1978). The evidence showed that Melear Corporation did not keep track of wild hogs on its property. It did not mark or brand them, and did not prevent them from leaving the property. In short, Melear never had or claimed ownership of this hog.[4]
We recognize that proof of exclusive ownership is not essential to support a conviction for theft. It is sufficient that the state prove the alleged "owner" had temporary possession or control of the property or a custodial interest in it. R.C. v. State, 481 So.2d 14, 15 (Fla. 1st DCA 1985). The state argues that the hog legally belonged to Melear because it was on its property. "As a property right incident to *1212 ownership, a property owner has a qualified interest in the wild game thereon. This interest is the right to exclusively hunt such wild game, subject to any lawful regulation by the state." 27 Fla.Jur.2d Fish and Game § 9 (1981) (emphasis added). Accord Hamilton v. Williams, 145 Fla. 697, 200 So. 80 (1941) (owner of soil has interest in game on land which is a "property right" incident to ownership of soil and has right to exclusively hunt wild game thereon). This property right, however, is not a right of ownership over the animals, but is one relating to the land itself  the right to exclude trespassers who otherwise might enter to pursue wild animals that are owned in common by all citizens.
The appellants' third argument is that the circumstantial evidence of their intent to take the hog was not inconsistent with their hypothesis of innocence. In view of our conclusion that the appellants cannot be convicted of grand theft of a wild animal, we need not resolve this issue, nor the others raised in the appellants' briefs.
Accordingly, we reverse the appellants' convictions for grand theft.
RYDER, A.C.J., and HALL and ALTENBERND, JJ., concur.
NOTES
[1] Except as it contributed to Officer Justesen's suspicions, this hog is not involved in the case at bar. The defendants testified that the hog had been taken legally in Manatee County. Possession of a hog is not unlawful.
[2] This misdemeanor conviction is not contested on appeal.
[3] On the other hand, deer are ordinarily regarded as wild animals, but in our state there are "deer ranches" whose inhabitants would qualify as "commercially farmed" animals. Cf. State v. Lee, 41 So.2d 662 (Fla. 1949) (information legally sufficient to charge larceny of "domesticated pet deer").
[4] Although not essential to our decision, we note that the state is considered to have an interest in wild animals. This interest is not in the nature of a private proprietary ownership, but rather, in the nature of a trust for the benefit of all of the people. See Barrow v. Holland, 125 So.2d 749 (Fla. 1960). We conclude that the typical wild hog in Florida at this time is a wild animal. It is immaterial that "wild" hogs more correctly may be described as "feral," being "a descendant of the [domestic] hogs that ranged throughout Florida and were once considered as the personal property of individuals maintaining a valid claim to the hogs within a described range." Allen Morris, The Florida Handbook 485 (20th ed. 1985-1986). The state now recognizes wild hogs as game animals and regulates their taking where hunting is allowed. See Fla. Admin. Code R. 39-1.002. The "piney woods rooter" has become a wild animal in the eyes of the law. We would, of course, reach a different result upon proof that a particular hog was actually a domesticated animal released by its owner to "free-range" on open land. See, e.g., Lewis v. State, 143 Fla. 531, 197 So. 120 (1940) (evidence sufficient to sustain conviction for larceny of hog where hog was found in defendant's possession and defendant was seen on settlement where hog ranged the woods about the time when owner discovered hog was missing).