620 So.2d 229 (1993)
COUNTY OF PASCO, Appellant,
v.
Chris and Wendy RIEHL, Appellees.
No. 92-02705.
District Court of Appeal of Florida, Second District.
June 16, 1993.
Thomas A. Bustin, County Atty., New Port Richey, for appellant.
No Appearance for appellees.
HALL, Judge.
The appellant, the County of Pasco, challenges a trial court order permanently enjoining it from enforcing a dangerous dog classification pursuant to section 767.12, Florida Statutes (1991). The county contends the trial court erred in finding section 767.12 unconstitutional. We disagree with the county and affirm.
The trial court, in its well-reasoned final order, has done an excellent job setting forth the facts of the instant case and explaining why section 767.12 is unconstitutional. We therefore quote extensively from the final order as follows:
On October 20, 1991, teenagers at their neighbor's, the Riehls, home were playing pool. One of the teenagers, Eric, was bitten by the [Riehls's] dog. On that same day, Eric's mother, Mrs. Tracy, reported the incident to the local sheriff's department. Mrs. Riehl was contacted. The deputy's report indicates that Mrs. Riehl advised the deputy that it was her dog who bit Eric. The report indicates that upon learning that the dog's rabies vaccination was not current, Mrs. Riehl was advised of the necessary *230 quarantine period. Those present at the house at the time of the bite included Eric, John and Daniel, friends of Eric's, and Mrs. Riehl. Mrs. Tracy, the mother of the bitten teenager was not present. On October 22, 1991, Mrs. Tracy completed a general affidavit describing the incident. On October 23, 1991, an animal bite/quarantine notification was issued. On October 28, 1991, Mrs. Tracy filed a dangerous dog affidavit stating that Sheba, the dog in question, aggressively bit, attacked or endangered or has inflicted severe injury to a human being, describing the incident by stating that her son was playing pool with the children and upon petting the dog, Sheba bit Eric. On November 23, 1991, a Notice of Dangerous Dog Classification was issued.
The Riehl's [sic] came before the Court requesting the Court to enjoin Pasco County Florida, (Pasco County Animal Control) from issuing the classification based upon the defense that the animal is not dangerous and that Sheba was provoked, that is, Sheba bit the teenager after the teenager had struck Sheba several times with the pool stick, that Sheba, being prodded again by the pool stick, then moved away from the pool table area, and upon the teenager approaching Sheba once more with pool stick in hand, Sheba bit the teenager.
Chapter 767, Fla. Stat., Damage by Dogs, was amended in 1990.[1] Prior to that amendment, the relatively short chapter provided in pertinent part, that dog owners were liable for damages done by their dog. By the 1990 amendment, the legislature, seeking to deal with "increasing serious and widespread threat to the safety and welfare of the people of this state because of unprovoked attacks" by dogs, set forth uniform requirements for owners of dangerous dogs. (§ 767.10, F.S.) Briefly, [if a] dog is classified as "dangerous", the owner is then subjected to requirements and restrictions substantially more rigid than prior to the classification, and upon an additional incident, the dog shall be destroyed, unless an appeal regarding the latter is successful. As to the "classification" stage, the statute provides in § 767.12(1), F.S. that "a dog shall not be declared dangerous if the threat, injury, or damage was sustained by a person who ... while lawfully on the property, was tormenting, abusing or assaulting the dog or its owner." The statute expressly provides in § 767.13(1), F.S. that before a dog [who has been] declared dangerous bites again, without provocation, is destroyed, and in § 767.13(2), F.S. that before a dog[, which has] not previously been declared dangerous but aggressively attacks and causes severe injury to a human being, is... destroyed, the owner shall have 10 days to apply to a court of jurisdiction for any available remedies. In contrast, the statute provides no time to be heard, before or after, the appropriate authorities issue a classification of "dangerous". Succinctly, even though the statute sets forth an absolute defense to the classification, it provides no forum to speak it.
Implementation of the statute is delegated to the local animal control authority. Where there is a reported incident, the animal control authority shall investigate and require sworn affidavits from individuals desiring to have a dog classified as dangerous. The animal control authority shall determine if a dog is to be classified as dangerous and shall immediately provide written notification to the owner of a dog that has been classified as dangerous. Importantly, a dangerous dog, as used in the act, means any dog that according to the records of the appropriate authority, has bitten, attacked.... § 767.11(1), F.S. At the hearing of this case, the [county] placed its pertinent documents into evidence, which presumably were the entire result of its investigation, together with the (hearsay) affidavit of Mrs. Tracy. On the basis of that evidence, the records which the appropriate authority had on this matter, Sheba was properly classified *231 as a dangerous dog. There was no hearing prior to classification, and no indication that Mrs. Riehl was informed of the potential classification prior to its issuance or was asked about the circumstances surrounding the biting.
Procedural due process requires that there be opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The "extent of due process required varies with the character of the interest and nature of the proceeding involved". Hadley v. Department of Administration, 411 So.2d 184 (Fla. 1982) citing, In Interest of D.B., 385 So.2d 83, 89 (Fla. 1980). In turn, this determination requires consideration of three factors: "first, the private interest that will be affected by the official action; second, the risk of deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Mathews v. Eldridge, 424 U.S. at 319, 335 [96 S.Ct. at 895, 903]. However, where there is no opportunity for a hearing whatsoever, prior to (or even after) substantial restrictions and penalties are placed upon the owner's use and enjoyment of his property, the statute on its face and in its operation, constitutes an unconstitutional denial of due process.
The Court, upon review of the pleadings, all the evidence before the Court, and applicable law, and having heard argument of counsel, finds by the preponderance of the evidence the dog, Sheba, bit Eric as a result of Sheba being struck and prodded several times by Eric with a pool stick. No substantial evidence was presented showing that prior to that final moment when Eric again approached Sheba did Sheba exhibit any aggressive behavior whatsoever. Accordingly, pursuant to § 767.12(1), Fla. Stat., evidence of such conduct by Eric constitutes an absolute defense to the classification of "dangerous dog". Therefore, it is
ORDERED AND ADJUDGED, that, as to the matter before this Court, defendant is permanently enjoined from issuing to Plaintiffs its "classification of dangerous dog", and it is further
ORDERED AND ADJUDGED that Section 767.12, Florida Statutes[,] is unconstitutional by its failure to provide for any hearing.
In its order, the trial court quotes extensively from the United States Supreme Court decision in Mathews v. Eldridge. In addition, we must emphasize that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. at 332, 96 S.Ct. at 901. "[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking [sic] process." Id. at 341, 96 S.Ct. at 905-06. "[T]he possible length of [a] wrongful deprivation ... is [also] an important factor in assessing the impact of official action on ... private interests." Id., citing Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975).
It is undisputed in the law that dogs and other domestic animals, commonly referred to as pets, are subjects of property or ownership. Levine v. Knowles, 197 So.2d 329 (Fla. 3d DCA 1967). In fact, once any animal has been legitimately reduced to private control, confinement, and possession, it becomes private property. Barrow v. Holland, 125 So.2d 749, 751 (Fla. 1960). When that occurs, the owner thereof cannot be deprived of the use thereof, except in accord with all of the elements of due process. Id.
Under section 767.12, a dangerous dog classification, as well as its attendant restrictions, can conceivably obtain without a legitimate basis therefor, as there are no specific guidelines to which the classifying *232 agency must conform or specific findings it must articulate in making its final determination. The fact that the statute fails to provide an alleged dangerous dog owner with an opportunity to be heard prior to a final determination, further exacerbates that potential for error.
A dangerous dog classification under the statute places many onerous restrictions on dog owners with so-called dangerous dogs. Those restrictions serve to deprive such owners of legal property interests within the meaning of the Fifth and Fourteenth Amendments. Thus, to allow the enforcement of such restrictions before a dog owner is given an opportunity to be heard is clearly a violation of due process. We must therefore agree with the trial court that section 767.12 is unconstitutional.
Accordingly, the order of the trial court is affirmed.
DANAHY, Acting C.J., and ALTENBERND, J., concur.
NOTES
[1] We note that the legislature has again amended this chapter in 1993. Though the amended version is not before us, it may be infected with the same infirmity described herein.