842 So.2d 142 (2003)
Frank I. MASSEY and Stephen W. Massey, Petitioners,
v.
CHARLOTTE COUNTY, Florida, Respondent.
No. 2D02-389.
District Court of Appeal of Florida, Second District.
February 7, 2003.
Rehearing Denied April 8, 2003.
*143 Warren R. Ross of Wotitzky, Wotitzky, Ross & Goldman, P.A., Punta Gorda, for Petitioners.
Renee Francis Lee, County Attorney, and Brendan Bradley, Deputy County Attorney, Port Charlotte, for Respondent.
ALTENBERND, Chief Judge.
Frank I. Massey and Stephen W. Massey (the Masseys) seek a petition for writ of certiorari to quash an order of the circuit court acting in its appellate capacity. The circuit court order affirmed an order issued by Charlotte County's Code Enforcement Board imposing a lien in the amount of $10,240.90 on property owned jointly by the Masseys. Because the Code Enforcement Board denied the Masseys procedural due process and the circuit court applied the incorrect law in determining otherwise, we grant the petition. See, e.g., Maple Manor, Inc. v. City of Sarasota, 813 So.2d 204 (Fla. 2d DCA 2002) (granting certiorari because circuit court applied incorrect law in holding that nuisance board proceedings provided appropriate due process). Although we do not mandate any specific procedure for the Code Enforcement Board to follow in imposing liens upon property for code violations, when the imposition of a lien requires additional factual findings, due process requires some predeprivation or postdeprivation process for the property owner to test the validity of those findings.
On July 5, 2000, the Charlotte County Code Enforcement Board held a hearing at which it found the Masseys in violation of the Charlotte County building code because they failed to obtain appropriate permits before constructing improvements on their property. The Masseys received notice of, and participated in, the hearing. Based upon the hearing, the Board entered an order on July 11, 2000, finding the Masseys in violation of the building code and requiring them to remedy the violation by "applying for and obtaining a permit within 30 days from the date of this hearing and obtaining a final inspection within 6 months from the date of the hearing" *144 or by removing any improvements and restoring the property to its original condition "with a demolition permit." The order further provided:
Failure to comply with any of the provisions of this order shall be punished by a fine of $100.00 per day for each day the violation is shown to exist past the specified time for compliance. A fine may become a lien on your property pursuant to Section 162.09, Florida Statutes.
On November 13, 2000, a building inspections supervisor, Mr. LaPorta, submitted an "affidavit of noncompliance" to the Code Enforcement Board, averring that the Masseys had not complied with the order of July 11, 2000, and asking the Code Enforcement Board to fine the Masseys $100.00 per day for a total of 101 days and to assess costs against them of $130.40. The affidavit stated: "[A] hearing is not necessary for the issuance of this order, and a certified copy of the order imposing fines and costs may be recorded as a lien against the real and personal property owned by the violator." There is no indication in this affidavit that it was served on the Masseys.
On January 3, 2001, the Code Enforcement Board met. The minutes of the meeting reflect the following:
Mr. Bradley explained that the Masseys still have not pulled the proper permits.
Mr. Prather motioned to approve the fine as stated in the Affidavit of Noncompliance. The motion was seconded by Mr. Adomatis and was passed unanimously.
The transcript of this meeting similarly reflects that the Code Enforcement Board summarily approved the imposition of the fines and a lien based solely upon the presentation of the affidavit and without further discussion. Accordingly, on January 4, 2001, the Code Enforcement Board issued an "order imposing penalty/lien" assessing fines and costs against the Masseys totaling $10,240.90 and imposing a lien on all non-exempt real and personal property owned by the Masseys in Charlotte County. The order did not indicate any avenue by which the Masseys could challenge the validity of these fines or the imposition of the lien. It is undisputed that the Masseys did not receive notice or an opportunity to be heard before the entry of this order. There is some indication that prior to the entry of this order, the Masseys had applied for the appropriate permits.
The Masseys sought review of the order imposing the fines and lien in circuit court, arguing that the imposition of the fines and lien without notice to them and an opportunity to be heard violated procedural due process. The circuit court affirmed the order. The Masseys now seek a petition for writ of certiorari to quash the circuit court's order. We grant the petition.
This case involves our review of a circuit court order entered in its review capacity over a final administrative order. Under these circumstances, this court's certiorari standard of review is limited to whether procedural due process was accorded and whether the circuit court applied the correct law. Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995). We conclude that the circuit court applied the incorrect law in rejecting the Masseys' procedural due process arguments.
Chapter 162, Florida Statutes (2000), establishes the procedures that code enforcement boards must follow to enforce local building codes and ordinances. Pursuant to that chapter, a code inspector who discovers a violation must notify the violator and give him or her a reasonable time to correct the violation. *145 § 162.06(2), Fla. Stat. (2000). If the violation is not timely corrected, the code inspector must notify the code enforcement board. Id. After notice to the property owner, the board must hold a hearing during which it must take testimony under oath from the code inspector and the alleged violator and must make findings and issue an order. § 162.07(3), (4), Fla. Stat. (2000). The order "may include a notice that it must be complied with by a specified date and that a fine may be imposed." § 162.07(4). The order is then filed in the public records to provide notice to any subsequent purchasers or assigns. Id.
If the owner complies with the order, the board must issue an order acknowledging compliance and file it in the public records. Id. If the owner does not comply, the code inspector notifies the board, which "may order the violator to pay a fine in an amount specified in this section for each day the violation continues past the date set by the enforcement board for compliance." § 162.09(1), Fla. Stat. (2000). "If a finding of violation ... has been made as provided in this part, a hearing shall not be necessary for issuance of the order imposing the fine." Id. Although fines cannot exceed $250 per day for a first violation or $500 per day for a repeat violation, there is no cap on the total fine that can be imposed unless the violation is irremediable. § 162.09(2)(a). In determining the amount of the fine to be imposed, the code enforcement board must consider (1) the gravity of the violation, (2) any actions taken by the violator to correct the violation, and (3) any previous violations committed by the violator. § 162.09(2)(b).[1] Finally, the order imposing the fine may be recorded in the public records "and thereafter shall constitute a lien against the land on which the violation exists and upon any other real or personal property owned by the violator." § 162.09(3).
After the lien is imposed and recorded in the public records, the statute does not expressly provide for any further process before the code enforcement board. In fact, the statute does not specifically require the board to send the violator a copy of the lien order. Although an "aggrieved party" may appeal a final administrative order of the board to the circuit court, that appeal is not a hearing de novo but simply an appellate review of the record before the code enforcement board. § 162.11, Fla. Stat. (2000).[2]
We have found no case law addressing whether the procedures required by chapter 162 comport with principles of due process, and we are not required to determine in this case whether the statute is facially unconstitutional. However, in this context we have previously noted, "It is necessary to fill the procedural gaps in [chapter 162] by the common-sense application of basic principles of due process." City of Tampa v. Brown, 711 So.2d 1188 (Fla. 2d DCA 1998); see also Michael D. Jones, P.A. v. Seminole County, 670 So.2d 95, 96 (Fla. 5th DCA 1996) (stating, "[a]lthough [code enforcement] boards can assert a lien against real or personal property, presumably section 162.09 would be interpreted to permit the presentment of *146 defenses prior to enforcement of any lien").
In this case, the Code Enforcement Board provided notice and an opportunity to be heard before issuing its preliminary order finding the Masseys in violation of the building code, as required by the statute. Thus, it is clear the Masseys received due process leading up to the entry of the July 11 order finding them in violation of the building code. Thereafter, however, the Code Enforcement Board entered the lien order based solely upon the code inspector's affidavit. The Masseys were not provided notice of the meeting at which the propriety of the fines and lien were addressed or any opportunity to be heard at the meeting or thereafter. The Code Enforcement Board did not consider the factors required by section 162.09(2)(b) in determining the amount of the fine imposed, and indeed there was no evidence presented to the Board regarding those factors. Moreover, the Code Enforcement Board provided no clear opportunity for the Masseys to challenge the facts upon which the lien order was based once it was issued. The question presented, therefore, is whether additional process was due to the Masseys either before or after the Code Enforcement Board ordered the imposition of the fines and lien.
Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests. County of Pasco v. Riehl, 620 So.2d 229, 231 (Fla. 2d DCA 1993). It serves as a vehicle to insure fair treatment through the proper administration of justice where substantive rights are at issue. Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So.2d 940, 948 (Fla.2001) (citing Dep't of Law Enforcement v. Real Prop., 588 So.2d 957, 960 (Fla.1991)). Procedural due process requires both fair notice and a real opportunity to be heard "at a meaningful time and in a meaningful manner." Keys Citizens, 795 So.2d at 948 (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The specific parameters of the notice and opportunity to be heard required by procedural due process are not evaluated by fixed rules of law, but rather by the requirements of the particular proceeding. Keys Citizens, 795 So.2d at 948 (citing Gilbert v. Homar, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)); see also Borden v. Guardianship of Borden-Moore, 818 So.2d 604, 607 (Fla. 5th DCA 2002).
In order to determine what process is constitutionally required, at least three factors are relevant: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute safeguards; and (3) the government's interests, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Keys Citizens, 795 So.2d at 948-49; Riehl, 620 So.2d 229. Procedural due process does not always require a predeprivation hearing. In some cases, a postdeprivation hearing is sufficient. This is particularly so in cases where there has been some initial predeprivation procedure. See Mackey v. Montrym, 443 U.S. 1, 13, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).
Here, the Masseys have a compelling interest in retaining their real and personal property free of undue interference or improper clouds of title. See Real Prop., 588 So.2d at 964 (stating, "[p]roperty rights are among the basic substantive rights expressly protected by the Florida Constitution"). Moreover, property rights are particularly sensitive where residential property is at stake. Id. As such, "the *147 means by which the state can protect its interests must be narrowly tailored to achieve its objective through the least restrictive alternative when such basic rights are at stake." Id.
The risk of a completely erroneous deprivation in this case is probably low given the process provided to the Masseys prior to the July 11 order finding them in violation of the building code. However, there remains a serious risk of an erroneous deprivation because the amount of fines imposed and the propriety of the lien depended upon factual findings that the Masseys were never given an opportunity to protest. These findings involved moderately complex issues, including whether the alleged violation continued, how long it continued, and whether there was any reason to reduce the per diem fine imposed in light of attempts by the Masseys to comply. To remedy the risk of improper seizure, there must be some type of procedure to allow the property owner to address these new findings. Cf. Riehl, 620 So.2d 229 (holding statute establishing "dangerous dog" classification violates due process; statute provides no forum for dog owner to raise absolute defense to classification).
Finally, although Charlotte County has an interest in protecting the safety and welfare of its citizens by insuring compliance with the building code and has an interest in expeditiously enforcing its orders without undue time and expense, there are further procedural safeguards that could be imposed that would not be unduly burdensome.
Given these considerations, we conclude the Masseys were not afforded procedural due process by the Code Enforcement Board. Cf. Real Prop., 588 So.2d 957 (concluding that in forfeiture proceedings regarding real property, due process required notice and adversarial hearing on question of probable cause prior to any initial restraint on real property other than lis pendens); State ex rel. Pittman v. Stanjeski, 562 So.2d 673 (Fla.1990) (avoiding any constitutional infirmities in act requiring entry of judgments for delinquent child support by interpreting act to require opportunity to be heard prior to entry of judgment); see also Baker v. Simpson, 773 So.2d 637 (Fla. 5th DCA 2000) (holding circuit court violated due process by imposing lien on property without further opportunity for owner to be heard, even though owner failed to comply with prior court order to remove property within thirty days). Although this court will not mandate any specific procedure that the Code Enforcement Board must follow, that procedure must provide the property owner with notice and an opportunity to be heard concerning any factual determination necessary to impose a fine or create a lien.[3]
We quash the order of the circuit court affirming the order of the Code Enforcement Board and remand for further proceedings consistent with this opinion.
WHATLEY, J., and GREEN, OLIVER L., SENIOR JUDGE, Concur.
NOTES
[1] Although these considerations apply to the issuance of a lien order, it is unclear when these issues should be addressed if no hearing is held. Moreover, even though section 162.09(2)(c) permits a code enforcement board to reduce any fine it imposes, the statute provides no formal procedure to request or grant that relief.
[2] In addition, at least one court has held that a property owner is prohibited from challenging the factual findings of a code enforcement board in subsequent proceedings to foreclose a lien imposed by the board, because such defenses are properly raised before the board or on appeal. See Kirby v. City of Archer, 790 So.2d 1214 (Fla. 1st DCA 2001).
[3] For example, the Code Enforcement Board could mail the "order imposing penalty/lien" to the property owner with a notice that the owner could request a hearing to challenge the fine and the resulting lien within twenty days from the date of the order. The notice could explain that the lien order would be recorded after twenty days unless the property owner filed a timely request for hearing. Presumably, the hearing would be limited to a consideration of only those new findings necessary to impose an appropriate fine and create a lien.