[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10814
Non-Argument Calendar

_____

D. C. Docket No. 07-01501-CV-ORL-22GJK

ROBERT W. KUPKE,
ANITA O. KUPKE,

Plaintiffs-Appellants,

versus

ORANGE COUNTY, FL,

Defendant-Appellee,

TRACEY GREENE,
KURT FASNACHT, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 8, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

In this civil rights action, Robert and Anita Kupke allege they were deprived of property without procedural due process. We vacate the district court's threshold dismissal of the claim and remand for further proceedings.

**I.**

At the motion to dismiss stage we, like the district court, assume the factual allegations in the complaint are true and draw all reasonable factual inferences in favor of the plaintiff. See, e.g., Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc., 376 F.3d 1065, 1070 (11th Cir. 2004). Then we review de novo whether the complaint, so construed, states a claim for relief. Id.

The Kupkes were cited by the Orange County Code Enforcement Board, their local land use authority, for impermissible outdoor storage of certain heavy machinery (including a bulldozer, a crane, a backhoe, and a "bush hog"[1]) and for maintaining a junkyard. The Kupkes protested that their machines were bona fide farming equipment and therefore exempted by Florida statute from local nuisance and zoning laws.

A hearing on the citation was held in August 1998, at which the Kupkes

_____

[1] In this context, a "bush hog" (also known as a "brush hog") is not an animal, but a type of mower used to clear vegetation by pulling it behind a tractor.

presented some evidence, but the Enforcement Board adjourned the hearing to permit appellants to construct an outbuilding to house their equipment, which would have brought it into compliance with the zoning laws. Later, in July 1999, the hearing was reconvened, apparently with no outbuilding having been built. After affording the Kupkes minimal time (five minutes) to put on evidence that their equipment was exempt, the Enforcement Board issued an order finding the Kupkes in violation of the Orange County Code and giving them thirty days to correct the problem. Thereafter, fines would accrue at $250 per day, as authorized by Fla. Stat. § 162.09(1).

The Kupkes appealed the order to Florida's Ninth Judicial Circuit. Both the Enforcement Board and the Ninth Judicial Circuit denied a stay pending appeal, so the fines continued to accrue, ultimately reaching about $125,000. The Board placed a lien upon the Krupkes' property in March 2000. To avoid further fines and foreclosure of the lien, the Krupkes sold their farm equipment at auction, resulting in a substantial loss. Selling the equipment brought the property into compliance with the zoning requirements, so the Enforcement Board filed an affidavit of compliance before the Ninth Judicial Circuit in February 2001. The Board also agreed, at some unspecified date after this affidavit was filed and after negotiation with the Kupkes, to reduce the fine to $2,500, which the Kupkes then

3

paid voluntarily. Thereafter, the Ninth Judicial Circuit found the Enforcement Board's action to be lawful. The Kupkes sought appellate review in Florida's Fifth District Court of Appeal. The court granted certiorari and concluded the July 1999 hearing deprived the Kupkes of property without procedural due process by denying them a meaningful opportunity to be heard prior to imposition of the fine. The court vacated the Ninth Judicial Circuit's judgment and remanded with instructions to vacate the Enforcement Board's order and order a new Board hearing, which Ninth Judicial Circuit on remand did. Before a new hearing could be held before the Enforcement Board, attorneys for Orange County voluntarily dismissed the case.

The Kupkes then filed this suit, seeking to recoup the $2,500 fine, the loss they took when they were forced to auction their farm equipment, the costs of the auction, and lost profits from their inability to farm due to sale of the equipment. On motion of defendant, the amended complaint was dismissed for failure to state a claim. The district court concluded that the complaint stated no constitutional violation, or alternatively that even if it did, the monetary losses incurred by the Kupkes were not caused by the violation alleged. This timely appeal ensued.

**II.**

4

The elements of the § 1983 claim at issue here are (i) deprivation of a constitutionally protected property interest, as a result of (ii) state action, and (iii) without the benefit of constitutionally adequate process. See, e.g., Grayden v. Rhodes, 345 F.3d 1225, 1232-33 (11th Cir. 2003). And although we have never explicitly stated it as a separate element of the claim, it is readily apparent that for a claim alleging deprivation of property without procedural due process to succeed, there must be a causal connection between the state action and the property deprivation. Id. at 1232 (due process implicated where plaintiffs are deprived of property "as a result of" state action); see also Ross v. Clayton Cty., Ga., 173 F.3d 1305, 1307 (11th Cir. 1999).

Thus, the Kupkes' theory of the case is that the deficient July 1999 pre-deprivation hearing resulted in the imposition of a fine (state action), which they eventually paid (a deprivation of property), and the accumulating fines caused them to undertake a fire-sale auction, resulting in further losses of property. Meanwhile, once the remanded Enforcement Board action was dismissed, they had no post-deprivation procedural remedy under state law, ensuring that they received constitutionally inadequate process.

The district court treated the state action complained of here as the voluntary dismissal of the administrative proceeding before the Enforcement Board after

5

remand from the Florida courts. Accordingly, it concluded (i) that this state action could not give rise to a procedural due process claim because any plaintiff has an absolute right to dismiss its case, and (ii) that the deprivations of property complained of, which all occurred before the voluntary dismissal, could not have been caused by the dismissal, and therefore no claim would lie.

We believe the district court misconstrued the complaint by focusing on the wrong state action. The complaint does, in places, allege that "[a]s a consequence of the Notice of Dismissal the Kupkes were deprived of their due process of law, resulting in [damages]." Compl. ¶ 28. But the complaint as a whole, fairly read, alleges that the damages sought are a consequence of the citation imposed after the inadequate July 1999 hearing and that the voluntary dismissal merely deprived the Kupkes of state procedural remedies which could have provided constitutionally adequate post-deprivation process. See Compl. ¶ 27 ("As a consequence of [the voluntary dismissal], the state court lost jurisdiction to further hear this dispute and to provide procedural due process . . . The [voluntary dismissal] resulted in a deprivation of Kupkes' constitutionally protected property interest in that the Kupkes could no longer avail themselves of state court remedies . . ."). Put differently, we do not understand appellants to argue that notice and a hearing is required before a local government instrumentality may dismiss a lawsuit or

6

administrative proceeding. Appellants merely argue their procedural due process claim did not ripen or accrue until the voluntary dismissal of the enforcement action by Orange County, and rightly so, because a lack of due process before a deprivation of property may be cured by adequate post-deprivation process. McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). This is because "the constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the state fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126 (1990). Thus, appellants argue that while due process was denied them at the July 1999 hearing, it was not apparent until the voluntary dismissal that they would also be denied any further state law remedy.

In any event, even if the Kupkes at times described their claim less artfully than they might have, a court's proper focus at the motion to dismiss stage is on the factual allegations of the complaint – whether it contains "enough factual matter (taken as true) to suggest the required element[s]" of the claim. Watts v. Fla. Int'l. Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (internal citations and punctuation omitted). When the facts in the complaint can be given a generous but reasonable construction which might satisfy the elements of the cause of action alleged, they ought not be given some other construction under which the claim borders on

frivolous. Hence, imposition of the fine is the appropriate state action for purposes of this claim.

So construed, we believe the complaint adequately alleges a deprivation of property resulting from state action, at least with respect to the $2,500 fine. The Enforcement Board's issuance of a citation and fine clearly constituted state action, and upon payment, deprived the Kupkes of property.[2]

A more complicated question is whether the Kupkes were afforded adequate process. In considering whether adequate remedies exist, we must consider what remedies are available under state law, not whether the plaintiff took advantage of them. Horton v. Bd. of Cty. Comm'rs, Flagler Cty., 202 F.3d 1297, 1300 (11th Cir. 2000). Florida law ordinarily provides for pre-deprivation process, namely notice and a hearing before the Enforcement Board before a citation will issue, with appellate review to follow. But a meaningful pre-deprivation hearing is precisely what appellants were denied here. The County urges that some combination of (i) judicial review of the Enforcement Board order, (ii) mandamus, and (iii) a new Enforcement Board hearing would afford the Kupkes all the process

---

[2] The fact that the Kupkes voluntarily paid the fine likely does not render the deprivation of property attributable to private conduct rather than state action, because the actions of private parties may be attributed to the state where it "coerced or at least significantly encouraged the action alleged to violate the Constitution." Focus on the Family v. Pinellas Suncoast Transity Auth., 344 F.3d 1263, 1277 (11th Cir. 2003) (citations omitted). Whether the lost profits, losses on auction of the equipment, and the costs of auction can plausibly be ascribed to state action are questions for the district court on remand.

they are due. We are not so confident, however, that any of these, or all of them in combination, provide a meaningful post-deprivation remedy in the circumstances presented. To be meaningful, a post-deprivation remedy must afford the property owner an opportunity to recover the property taken without due process if the evidence so warrants, and it is not clear from the record and the parties' briefs that any of the procedures advocated by the County do so. As to appellate review in the Florida courts: in their appeal of the Enforcement Board action, the Kupkes asserted a lack of due process as a *defense* against enforcement of the citation against them. The citation was quashed in due course after the Fifth District Court of Appeals' decision, but as we read the complaint, the appellate court's mandate provided no basis for imposition of any liability against the County, nor did it necessarily require repayment of fines paid after the deficient hearing. In contrast, in this action the Kupkes employ that same constitutional argument, lack of due process, as a *claim* to recover damages. Perhaps the Florida courts would not adhere to this formal distinction, but we have no reason to believe to the contrary at this stage of the proceedings.

The County also urges that the Kupkes should have sought rehearing before the Enforcement Board, which would have provided an adequate state law remedy. But contrary to the County's position, neither the face of the complaint nor our

9

review of Florida law suggests that the Kupkes could obtain rehearing before the Enforcement Board on their own motion. Indeed, at least one Florida court has held that Enforcement Boards lack legal authority to grant rehearing to aggrieved landowners. City of Palm Bay v. Palm Bay Greens LLC, 969 So.2d 1187, 1190 (Fla. Ct. App. 2007) (citations omitted). The County also urges that the Florida courts could issue mandamus compelling a new Enforcement Board hearing if the Fifth District's mandate so requires, but that is a useful remedy only if a new hearing would be.[3]

Even if the Kupkes could obtain rehearing before the Enforcement Board on their own motion or by mandamus, it is not apparent that such a hearing would provide an adequate post-deprivation remedy for wrongfully collected fines. Chapter 162 of the Florida Statutes, the organic act which authorizes the creation of local zoning Enforcement Boards, specifies the qualifications and terms of Board members, Fla Stat. § 162.05, authorizes enforcement proceedings, § 162.06, and specifies procedures to be employed at Board hearings, § 162.07. But it makes no mention of a mechanism whereby a property owner may initiate a new proceeding to recoup an unlawfully imposed fine after payment thereof; it appears that Enforcement Boards may be authorized only to hear enforcement proceedings

_____

[3] There was no argument that the appellate court's mandate was ignored; appellants concede that voluntary dismissal was within the County's rights.

10

initiated by code inspectors.  See Fla. Stat. §§ 162.05; 162.06(1).

Yet because Chapter 162 is fairly skeletal about the procedures to be employed in Enforcement Board disputes, Florida courts "fill the procedural gaps in [chapter 162] by the common-sense application of basic principles of due process."  Massey & Massey v. Charlotte Cty., 842 So.2d 142, 145 (Fla. Dist. Ct. App. 2003) (citations omitted).  So the absence of a refund-like procedure in Chapter 162 does not decisively prove that the Kupkes could not obtain a refund; Florida case law and administrative practice are also relevant.  Perhaps Enforcement Boards have an informal practice of refunding fines that a court later determined to have been imposed without due process.  Perhaps the power to do so is taken for granted by Florida courts and Enforcement Boards.  But at this stage of the proceedings and given the arguments presented to us, we are not sufficiently confident that such a power or practice exists to conclude that the Kupkes would have a post-deprivation remedy.  This appears to be a matter that may be more fruitfully addressed on a summary judgment record.

In short, we cannot say with any confidence that the Kupkes have not alleged a cognizable due process claim.  In particular, as the above discussion makes clear, neither the record at the motion to dismiss stage nor the arguments made on appeal conclusively demonstrate that the Kupkes had an adequate remedy

11

to recover the wrongfully imposed fines.  Therefore, we must remand the case for

further proceedings.[4]

Accordingly, we **VACATE** the district court's order dismissing the

complaint and **REMAND** for further proceedings consistent with this opinion.

---

[4] We also encourage the parties to make good faith efforts to reach a reasonable settlement of this matter, which has grown, no doubt unnecessarily, from a simple zoning dispute into a decade-long, multi-forum saga.