365 So.2d 153 (1978)
STATE of Florida, Appellant,
v.
Peter M. CUMMING, Appellee.
No. 51925.
Supreme Court of Florida.
November 22, 1978.
Robert L. Shevin, Atty. Gen. and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee *154 and T. Ed Austin, State's Atty. and Stephen R. White, Asst. State's Atty., Jacksonville, for appellant.
Kevin V. Canipelli of Schwartz & Bolinger, Jacksonville, for appellee.
BOYD, Justice.
This is a direct appeal from the County Court of Duval County, transferred here by the Circuit Court for that County. The trial judge passed directly on the constitutional validity of Section 372.922, Florida Statutes. Pursuant to Article V, Section 3(b)(1), Florida Constitution, we have jurisdiction.
Appellee was charged with unlawful possession of an ocelot. The possession, without a permit, of any wildlife (as defined in the regulations of the Florida Game and Fresh Water Fish Commission) is unlawful under Section 372.922, Florida Statutes. The wildlife is designated as Class I or Class II  this appeal is concerned with Class II: "Wildlife considered to present a real or potential threat to human safety..." The statute directs the Commission to further define Class II wildlife in its rules. Regulations to ensure that permits from the Commission are "granted only to persons qualified to possess and care properly for wildlife," and that wildlife possessed as personal pets "will be maintained in sanitary surroundings and appropriate neighborhoods" are to be promulgated by the Commission.
Rules 16E-5.051 and 5.052, Florida Administrative Code (Florida Game and Fresh Water Fish Commission), are the regulations promulgated by the Commission pursuant to the mandate of Section 372.922, Florida Statutes, for implementing the guidelines of the statute. Rule 16E-5.051 defines Class II wildlife, including ocelots, and lists their scientific or Latin name in parentheses. No unsafe or unsanitary conditions or confinement "in a manner which results in the maltreatment, mistreatment, or neglect of such wildlife" are permitted. Supervision and caution with the wildlife are required as well. Requirements for caging and restrictions on where the wildlife may be exercised are given in the rule. Rule 16E-5.052 leaves sanitation to be carried out in accordance with local, state and federal regulations. Specific caging materials and strength requirements are listed generally and for specific animals in each Class. No requirement that the animals be caged at all, however, is included.
Peter M. Cumming, after a denial of renewal of his permit, was cited by the Commission for possession of an ocelot, Class II wildlife, in an unsafe manner; namely, in an inappropriate neighborhood. He lived in an apartment at the time. One month later, Cumming was charged by information with possession of Class II wildlife without a permit, contrary to Section 372.922, Florida Statutes. He moved to dismiss the information because the statute and the rules implementing it are vague, indefinite, and overbroad. The trial judge, after taking expert testimony, dismissed the information and declared the statute and rules unconstitutional as applied. The state's appeal to the Circuit Court was transferred here on motion of appellee Cumming. Pursuant to our order temporarily relinquishing jurisdiction, the County Court clarified its reasons for invalidating the statute and rules. The cause is now here for resolution of the constitutional issues.
Appellee finds fault with the statute in that: the wording is too vague to enable one to ascertain what activity is proscribed, and the guidelines for the Commission's implementation of the statute are too vague and thus unlawfully delegate legislative authority. Appellee faults the rules for failing to provide standards for the granting or denial of permits or for determining what is an appropriate neighborhood. Appellee also charges that the rules fail to provide notice of the proscribed activity in that the use of the Latin name "Leopardus pardalis" to denote ocelots, when experts use the name "Felis pardalis" instead, leaves the rule vague and indefinite.
The state's argument that Section 372.922, Florida Statutes, enables persons of common intelligence to ascertain whether *155 or not a contemplated act is lawful is supported by the language of the statute. The statute clearly prohibits possession without a permit from the Commission of "any wildlife as defined in this act." The statute, though lacking a specific definition of the term "wildlife," provides effective notice of what wildlife is contemplated as necessitating a permit by dividing that wildlife into the two Classes, and then directing that the regulations of the Commission shall further define the types of animals in the Classes.
The purchaser or owner of wildlife is put on notice that a permit will be required from the Commission if the possessed wildlife fits either the Class I or the Class II description and is defined in the regulations as the type of animal included under either Class. The owner is not left to hazard a guess as to whether his animal is unfit to be a personal pet because of its nature, habit, or status, or whether it presents a real or potential threat to human safety; instead, he is directed by the statute to the regulations of the Commission.
Rule 16E-5.051, Florida Administrative Code, specifically defines Class II wildlife as including ocelots. Though the rule includes the scientific or Latin name "Leopardus pardalis" in parentheses, it is clear that the general category of "ocelot" is what is sought to be regulated and is, thus, the controlling term. The owner of any of the specifically categorized animals is given a reasonable opportunity to know that a permit from the Commission is required for his animal.
Appellee's contention over which Latin name  "Felis pardalis" is urged upon us by appellee as the only term that experts understand  correctly denotes ocelots generally, misses the point of the statute. The possible existence of several subspecies of ocelot due to crossbreeding, does not take those species out of the general category of "ocelot" and place them, for instance, in a "domestic cat" category. To allow such fine distinctions destroys the usefulness of any law of general applicability.
The Court takes note here that Cumming, in possession of an ocelot, apparently received adequate notice from the statute since he obtained a permit for the animal. It was not until he sought renewal of his permit and was refused and later charged with violation of the statute that he found the notice inadequate.
It is our judgment that Section 372.922, Florida Statutes, "uses language sufficiently definite to apprise those to whom it applies what conduct on their part is prohibited." State v. Wershow, 343 So.2d 605 (Fla. 1977). The statute cannot be unconstitutional for that reason.
In the same vein, we find that the statute does not unconstitutionally delegate legislative authority. The statutory guidelines adequately describe the bounds within which the Commission is to promulgate its regulations. Wildlife to be defined by the Commission as Class II is confined to wildlife which presents "a real or potential threat to human safety...." Permits are to be granted by the Commission "only to persons qualified to possess and care properly for wildlife," as determined by the Commission's rules and expertise. Additionally, the Commission shall establish what are "sanitary surroundings and appropriate neighborhoods" in which the possessed wildlife must be maintained.
The Commission is not given the authority "to grant approval to one yet withhold it from another, at whim... ." Dickinson v. State, 227 So.2d 36 (Fla. 1969). As this Court has said in Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976), quoting from State v. Griffin, 239 So.2d 577 (Fla. 1970), "Obviously, the very conditions which may operate to make direct legislative control impractical or ineffective may also, for the same reasons, make the drafting of detailed or specific legislation impractical or undesirable." Section 372.922, Florida Statutes, deals adequately with just such conditions of impracticality.
The same cannot be said, however, for the rules the Commission promulgated for the issuance of the permits. Rules 16E-5.051 and 5.052, Florida Administrative Code, do not sufficiently define the standards *156 upon which a permit is to be granted or denied. The inadequacy of the rules in addressing the statutory guidelines of Section 372.922, Florida Statutes, leaves the Commission broad discretion to employ any standard, including the statutory guidelines themselves, in issuing the permits. Although the statutory guidelines are adequate to avoid appellee's charge of unlawful delegation, they are far too vague and overbroad to be suitable as standards for the issuing of permits.
Rule 16E-5.051 does not define what is a "qualified person," what are "sanitary conditions," or what constitutes an "appropriate neighborhood." The rule recites that possessed wildlife be "housed in a safe and sanitary manner as prescribed by the Commission." Nowhere does the rule prescribe what is a sanitary manner or condition. The only reference to what is an appropriate neighborhood is the restricting of the exercising of the possessed wildlife to the owner's property or property for which prior permission for use has been given the owner. As for a qualified person, one is left to guess whether meeting all or any of the criteria in either of the rules establishes a person as qualified. At best, the rule addresses the proper care of the wildlife and the general caution to be used to protect the public from injury.
Rule 16E-5.052 specifies the caging and fencing requirements for housing the wildlife. The rule, however, contains no mandate that the wildlife be caged. Again, sanitation is mentioned but only by way of incorporating local, state, or federal regulations as the requirements for the wildlife owner. No specific standards on what are sanitary surroundings are stated, and the caging requirements provide no further assistance.
Appellee was cited by the Commission for possessing an ocelot in an unsafe manner, to-wit: an inappropriate neighborhood. Likewise, when the officers from the Commission called at appellee's apartment in response to his application for renewal of his permit, they informed appellee that he was in an inappropriate neighborhood for possessing an ocelot.
This use by the Commission of the statutory guidelines reaffirms our conclusion that the failure of the Commission's rules to provide adequate standards for issuing permits has resulted in an unconstitutional application of Section 372.922, Florida Statutes. It is the failure of the Commission to implement through its rules the statute's guidelines that has left the statute to require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application... ." State v. Wershow, supra, quoting from Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934). The issuance of the permits is based on the vague and overbroad standards of "persons qualified," "sanitary surroundings" and "appropriate neighborhoods."
It is our judgment that because of this infirmity, Section 372.922, Florida Statutes, cannot be applied constitutionally. Without a valid permit procedure being available to owners of wildlife covered by the statute, no prosecution for lack of a permit is possible. The Commission must remedy its deficient regulations.
The order of the Duval County Court is affirmed in part and reversed in part and remanded for the entering of an order, consistent herewith, to dismiss the cause.
It is so ordered.
ADKINS, OVERTON, HATCHETT and ALDERMAN, JJ., concur.
ENGLAND, C.J., and SUNDBERG, J., concur in the result only.