SMITH, Judge.
This is an appeal and a cross-appeal of a final order of the Division of Administrative hearings concerning Medicaid reimbursement to nursing home facilities. We affirm the appeal as well as the cross-appeal.
Health Care and Retirement Corporation of America, Inc., (HCR) owns and operates seven nursing homes in Florida which accept Medicaid patients. Accordingly, HCR periodically files with HRS a cost report (HRS 1542), regarding each facility and the home office, seeking expense reimbursements from Medicaid. HRS caused certain cost reports filed by HCR to be audited by an independent accounting firm, which proposed that certain claimed costs be disallowed. Thereafter, HCR and the seven nursing homes filed a petition seeking an administrative determination of the validity of the rule or non-rule policy upon which some of the claimed costs were disallowed. More particularly, HCR and its Florida facilities took issue with HRS’ practice of requiring costs, described as indirect home office costs, to be reimbursed as general and administrative costs rather than property costs.[1]
The rule challenge under section 120.56, Florida Statutes (1989), was consolidated with seven section 120.57 proceedings brought by HCR and its seven Florida facilities. The question presented in the 120.56 proceeding was whether the instructions prepared by HRS for use in completing a cost report constituted a rule which was not duly promulgated. In the alternative, HCR argued that if the instructions were found to be a validly promulgated rule, the instructions are nevertheless invalid as vague. HCR also challenged the HRS policy, not embodied in a rule, of not *541 allowing indirect home office property to be reclassified for reimbursement.
Following a hearing, the DOAH hearing officer issued a final order in which he found that the instructions, which have the force and effect of a rule, were not invalid as unduly promulgated. The hearing officer found that the instructions constitute an integral part of the Florida Title XIX Long Term Care Reimbursement Plan, which in turn were incorporated by reference in Rule 10C-7.0482, Florida Administrative Code. The hearing officer noted that users of the Plan have been placed on notice that the, cost report must be prepared in accordance with the instructions, a copy of which is on file with the Department of State. Thus, the hearing officer concluded as a matter of law that the applicable rule-making procedures had been followed in all material respects.
However, the hearing officer also concluded as a matter of law that a part of the instructions, Paragraph E, is vague because persons of common intelligence must necessarily guess at the meaning of Paragraph E, given the fact that it facially conflicts with certain portions of the Plan and with the federal regulations compiled in Health Insurance Manuel No. 15 (HIM-15).[2] The hearing officer observed that neither the instructions nor the Plan advise a Medicaid provider which document would control in the event of conflicting provisions. The hearing officer nevertheless concluded that while the instructions were vague, and that HRS was vested with unbridled discretion over the matter, the instructions were not so illogical, despotic or lacking in factual support as to be arbitrary. See, Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978). However, the hearing officer also concluded that the interpretation accorded Paragraph E of the instructions[3] by HRS is not readily apparent from a literal reading, and that the interpretation has been applied with the force and effect of a rule without being duly promulgated. Therefore, the hearing officer concluded that HRS’ interpretation of Paragraph E constituted an invalid exercise of legislative authority.
In its appeal, HRS challenges the hearing officer’s finding that Paragraph E is vague. HRS bolsters its argument by noting the fact that six of HCR’s seven nursing homes correctly followed Paragraph E when completing their respective cost reports. We find no basis in this argument for overturning the final order. The hearing officer did not use his finding of vagueness to strike down Paragraph E or any other Medicaid-related provisions. Thus, any disagreement we might have with the hearing officer’s finding would not require a reversal of the final order. Moreover, the test for vagueness, vel non, of an administrative provision or a statute, is not whether a party has interpreted the provision in the manner favored by the relevant agency. Rather, the test for vagueness was set forth in State v. Cumming, 365 So.2d 153 (Fla.1978), and State v. Rodriguez, 365 So.2d 157 (Fla.1978): “whether men of common understanding and intelligence must guess at [the provision’s] meaning.”
Turning to the second issue raised by HRS, we are not persuaded that the hearing officer erred in finding a conflict between the instructions, on the one hand, and the Plan and HIM-15 on the other. Specifically, HRS argues that the part of HIM-15 relied upon by the hearing officer *542 in finding a conflict, Chapter 10 of HIM-15, was the wrong provision.
As support for its assertion that Chapter 10 is inapplicable, HRS cites to section 1000 as proof of the intent of Chapter 10. When section 1000 is read in full, it is clear that the statement of intent quoted by HRS refers only to the rule established in section 1000 and is plainly not intended as a statement of the intent behind the entire chapter.
HRS also argues no conflict can exist with regards to Chapter 10 because the term “home office costs” is not utilized. Instead, the term “costs to related organizations” is employed. However, the first section in Chapter 10, section 413.17 makes it obvious that home office costs are included within the purview of the chapter, to wit: “[c]osts applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includ-able_” (emphasis added). In sum, we find HRS’ arguments on this point unavailing.
Finally, we find no merit in HRS’ argument that the hearing officer erred in finding that HRS placed an interpretation upon Paragraph E of the instructions which is not readily apparent from the language of the provision. It is clear that the instructions pertain to the completion of a cost report. HRS has not challenged the hearing officer’s finding that the completion of the cost report is a function separate and apart from the audit process which leads to reimbursement. Likewise, HRS has not challenged the hearing officer’s finding that there is a mechanism in the Plan and HIM-15 for reclassifying certain costs. Given these findings and the plain meaning of Paragraph E, we find no basis for concluding that the hearing officer erred on this point. In sum, we find no basis for reversal in HRS’ appeal of the final order.
Nor do we find merit in HCR’s cross-appeal in which it asserted that the hearing officer erred in concluding the “double incorporation” of the instructions in the Plan which is incorporated in the Rules was not erroneous. The hearing officer did not find a double incorporation had occurred. Instead, he found simply that the instructions were so integral to the Plan as to be a part of it. Our review of the record supports that finding.
Having found no basis to disturb the hearing officer’s final order in the rule challenge proceeding, the order appealed is AFFIRMED.
JOANOS, C.J., and BARFIELD, JJ., concur.

. Costs incurred by a Medicaid provider and its home office (aka related organization) are reimbursed at different rates according to the character of the cost.

. The Plan establishes the methodology for reimbursement of Medicaid nursing homes. If the Plan is silent on an issue, then HRS looks to HIM-15 for guidance.

. The pertinent part of Paragraph E provides: "Home office costs which are not directly allocated to the provider but are allocated on a functional or pooled basis [i.e., are indirect] should be included in the provider’s cost report as part of the provider’s general and administrative costs.” General and administrative costs are reimbursed as operating costs. HRS has refused on the basis of Paragraph E to allow certain costs accounted for as general and administrative costs to be reclassified as property costs for the purpose of reimbursement. However, the Plan indicates that home office costs are to be reimbursed pursuant to HIM-15, which in turn indicates that home office costs should be reimbursed as property costs.