609 So.2d 744 (1992)
STATE of Florida, Appellant,
v.
Robert Woodrow HOYT, Jr., and Daniel Hoyt, Appellees.
No. 91-02415, 91-02416, and 91-02417.
District Court of Appeal of Florida, First District.
December 7, 1992.
*745 Robert A. Butterworth, Atty. Gen., and Charlie McCoy, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for appellant.
James R. Thies, Sr., Orange Park, for appellees.
BOOTH, Judge.
This cause is before us on appeal[1] from three final orders of the Clay County Court holding section 370.11(3), Florida Statutes,[2] unconstitutional.
*746 Appellees were charged with violating section 370.11(3)(a), Florida Statutes, for taking shad from the St. John's River with a net between sundown Saturday evening and sunrise Monday morning. Appellees filed identical motions to dismiss the charges, contending that the statute was unconstitutionally vague and overbroad for numerous reasons. The trial court entered three identical orders granting the motions to dismiss, each of which provided in pertinent part:
1. Florida Statute [370.11(3)(a)], describes a class of people who cannot take shad between sundown on Saturday afternoon and sunrise on Monday morning. This section of the statute fails to give a definition for shad and the term shad as it applies to this statute is not defined anywhere in the statutes or in the Administrative Codes [sic].
2. It is clear that there was a legislative intent to carve out certain exceptions to [370.11(3)(a)]. Such a demonstration is found in [370.11(3)(d)], which talks in terms of the casual fisherman, who apparently can take shad on any day up to a limit of ten (10). This section does not give a definition for shad and apparently is in conflict with [370.11(3)(e)4], which defines all individuals not described in Section [370.11(3)(e)2] as having the capability to take ten (10) "anadromonus" [sic] shad per day.
3. It would appear and the courts [sic] finds, that [370.11(3)(e)] defines certain conditions as it [sic] applies to commercial fishermen. This section states that a commercial fisherman may fish from December 31, until March 1, for "anadromonus [sic] shad". This section goes on to state that the Department of Natural Resources may close the waters for a continuous forty-eight hour period each week interrupting the right for commercial fisherman [sic] to take fish and commercial fishermen must withdraw their nets from the water during that forty-eight hour period. Based upon testimony, research of the statutes, and the Florida Administrative Codes [sic], the court finds that no such forty-eight hour period has been designated by the Department of Natural Resources.
4. It would appear that the statute is vague in defining whether [370.11(3)(a)] is an addition to the requirements of [370.11(3)(e)] or whether commercial fishermen are excluded from the section of [370.11(3)(a)]. The Court also finds that the statute is void of any violation of law for the non-compliance of [370.11(3)(e)] by commercial fishermen.
5. It is unclear to this court as to the definitions of fishing and the term shad as applied in the various sections of this statute.
6. The court finds this statute to be vague and over broad [sic] as applied to the class of commercial fishermen... .
In seeking reversal, the State contends: (1) that the trial court erred in finding that appellees had standing to challenge paragraph (3)(e) of the statute, in that the record contains no evidence that appellees were engaged in commercial fishing; and (2) that the trial court was incorrect as to each of the stated grounds for finding the statute unconstitutional.
We reject the State's contention that appellees had no standing to challenge paragraph (3)(e) of the statute. Appellees contended below that they were commercial fishermen and, hence, subject to regulation under paragraph (3)(e). The State never made any argument to the contrary, and indeed, the record is replete with instances of the State either conceding that appellees were commercial fishermen or treating them as such. The record also indicates that the trial court considered appellees commercial fishermen. We turn, then, to the State's contention that the trial court erred as to each of its stated grounds for finding the statute vague and overbroad.
The doctrines of vagueness and overbreadth are separate and distinct. Legislation is not susceptible to an overbreadth challenge unless it applies to conduct protected by the First Amendment. Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984); State v. *747 Freund, 561 So.2d 305, 306 (Fla. 3d DCA 1990); State v. Burch, 545 So.2d 279, 281 (Fla. 4th DCA 1989), approved, Burch v. State, 558 So.2d 1 (Fla. 1990). Appellees have properly conceded that the overbreadth doctrine has no application here because fishing for shad is not an activity protected by the First Amendment.
The vagueness doctrine, however, has broader application because it was developed to assure compliance with the Due Process Clause of the United States Constitution. A vague statute is one which fails to give adequate notice of what conduct is prohibited and which, because of its imprecision, may invite arbitrary and discriminatory enforcement. Southeastern Fisheries, supra at 1353; Sexton, Inc. v. City of Vero Beach, 555 So.2d 444, 447 (Fla. 4th DCA 1990). An appellate court, however, has a duty to find an allegedly unconstitutional statute constitutional if the application of ordinary logic and common understanding would so permit. Firestone v. News-Press Publishing Company, Inc., 538 So.2d 457, 459-460 (Fla. 1989); Florida League of Cities v. Administration Commission, 586 So.2d 397, 412 (Fla. 1st DCA 1991). When a statute does not specifically define words of common usage, courts must construe such words according to the plain and ordinary meaning. Green v. State, 604 So.2d 471 (Fla. 1992); Southeastern Fisheries, supra at 1353; M.L.B. v. Department of Health and Rehabilitative Services, 559 So.2d 87, 88 (Fla. 3d DCA 1990), petition for review denied, 574 So.2d 140 (Fla. 1990). Courts must also consider whether the words have definite meaning to the class of persons within the purview of the statute. As the court held in State v. Hagan, 387 So.2d 943, 946 (Fla. 1980):
We also believe that the terms "trawl net" and "trawling operation" have a definite meaning as used in connection with the fishing industry. As to the term "trawl net," we note that Webster's Third New International Dictionary (3d ed. 1976), at page 1031, defines the term as "a large conical net with a device for keeping its mouth open that is dragged along the sea bottom in gathering fish or other marine life." A statute may satisfy due process requirements even though it contains general terms and does not furnish detailed plans and specifications of the act or conduct proscribed. [citations omitted]
Accord, Southeastern Fisheries, supra at 1353-1354; State v. Little, 400 So.2d 197, 198-199 (Fla. 5th DCA 1981). Courts cannot require that the Legislature draft laws with such specificity that much of what is sought to be regulated would be exempted from the statute. Southeastern Fisheries, supra at 1353; State v. Cumming, 365 So.2d 153, 154-155 (Fla. 1978).
We will address each of the basic rulings of the trial court. In paragraphs 1 and 5 of the orders dismissing the charges, the court below found the statute unconstitutionally vague for its failure to define "fishing" and "shad." We have little difficulty concluding, however, that these terms are not so vague that persons of common intelligence must guess at their meanings. Moreover, each term has a definite meaning within the fishing industry.
In paragraph 2 of its orders, the court below found conflict between paragraph (3)(d) and subparagraph (3)(e)4. The order does not explain, nor can we discern, any conflict between the two provisions. Paragraph (3)(d) exempts casual fishermen from the closure period set forth in paragraph (3)(a), and permits the taking at any time of up to ten shad per day by means of hook and line. Subparagraph (3)(e)4 prohibits persons other than commercial fishermen from taking more than ten anadromous shad per day. "Anadromous shad" is defined in subparagraph (3)(e)1 as any of three species of shad.
The court next found vagueness, in paragraph 3 of its orders, as to subsection (3)(e)2, which designates the commercial fishing season for anadromous shad to be from December 31 through March 1. This subparagraph also permits the Department of Natural Resources (DNR) to set a 48-hour period of closure during each week of the commercial season. The court found that DNR had failed to set a closure period *748 and that DNR's failure to set the closure period renders the statute vague. We must agree with the State, however, that DNR's failure to exercise its authority does not render the statute vague.
Finally, in paragraph 4 of the orders, the court found the statute vague as to whether commercial fishermen subject to regulation under paragraph (3)(e) are exempt from the rule set forth in paragraph (3)(a), prohibiting fishing for shad between sundown Saturday afternoon and sunrise Monday morning. Paragraph (3)(a), however, clearly sets forth a rule which applies to a broad class of persons (whoever fishes for shad). Nothing in paragraph (3)(e) evinces any legislative intent to exempt commercial fishermen from the purview of paragraph (3)(a).
The trial court also concluded that the statute was vague in failing to specifically set forth the penalties for violation of paragraph (3)(e). However, Section 370.021(2), Florida Statutes, provides penalties for violations of chapter 370 applicable to paragraph (3) of section 370.11. Penalty provisions of paragraphs (3)(a) and (3)(c) are simply exceptions to the general applicability of section 370.021(2), Florida Statutes, and do not render the statute vague.
The Legislature has declared the policies of chapter 370 in section 370.025(1) in part as follows:
The Legislature hereby declares the policy of the state to be management and preservation of its renewable marine fishery resources, based upon the best available information, emphasizing protection and enhancement of the marine and estuarine environment in such a manner as to provide for optimum sustained benefits and use to all the people of this state for present and future generations.
Where constitutionally permissible, a statute should be construed to effectuate the purpose for which it was enacted. State v. Schell, 222 So.2d 757, 759 (Fla. 2d DCA 1969). Although not a model of clarity, the provisions here in question adequately accomplish the beneficial purpose of section 370.025, Florida Statutes.
For the foregoing reasons, the orders below are reversed, and this cause is remanded for proceedings consistent herewith.
BARFIELD and ALLEN, JJ., concur.
NOTES
[1] Our jurisdiction is under section 26.012(1), Florida Statutes.
[2] Section 370.11(3), Florida Statutes, is in pertinent part:

(3) REGULATION; FISH; SHAD, PROTECTION DURING SPAWNING SEASON.  ... .
(a) Fishing for shad between Saturday afternoon and Monday morning; penalty.  Whoever fishes for shad between sundown on Saturday afternoon and sunrise on Monday morning shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.083 and by confiscation of the boat and fishing tackle used in such unlawful acts.
... .
(c) Use of certain gill net for capture of shad; penalty.  No person may place in the rivers of this state any gill net, for the capture of shad, of a less size than 2 1/2 inches bar from knot to knot, or 5 inches stretched mesh from knot to knot. Any person violating any of the provisions of this section shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(d) Fishing for shad with hook and line.  Nothing in this section shall prevent the taking of shad at any time by means of pole and line, rod and reel, plug, bob, spinner, spoon, fly, troll or other natural or artificial bait used with hook and line. However, no person is permitted to take, in 1 day, more than 10 shad by the above methods.
(c) Shad; limitation on taking. 
1. As used in this paragraph, "anadromous shad" includes American shad (Alosa sapidissima), Hickory shad (Alosa mediocris), and Alabama shad (Alosa Alabamae).
2. Commercial fishing for anadromous shad shall be for the period from sunup on December 31 until sundown on March 1... . The commercial fishing period established herein shall be closed in the streams and rivers of the state for 48 consecutive hours each week, and nets shall be removed from the water during this period. The Department of Natural Resources shall have the authority to set the closed hours each year.
... .
4. It is unlawful for any person other than those listed in subparagraph 2. to take in 1 day and have in his possession more than 10 anadromous shad.