677 So.2d 357 (1996)
FLORIDA EAST COAST INDUSTRIES INC., et al., Appellants,
v.
STATE of Florida, DEPARTMENT OF COMMUNITY AFFAIRS, Appellee.
Nos. 94-873, 94-874.
District Court of Appeal of Florida, First District.
July 2, 1996.
*358 Fred H. Kent, Jr. and Thomas F. McMorrow of Kent, Hayden, Facciolo & McMorrow, P.A., Jacksonville, for Appellants.
Davis J. Russ, Assistant General Counsel, Department of Community Affairs, Tallahassee, for Appellee.
*359 SHIVERS, Senior Judge.
Florida East Coast Industries, Inc. and its wholly owned subsidiaries (FECI) and St. Joe Paper Co. and its wholly owned subsidiaries (St.Joe) appeal an order of the Division of Administrative Hearings (DOAH) finding that the appellants have failed to demonstrate that proposed rules 9J-5.003(140) and 9J5.006(6), Florida Administrative Code, are each an invalid exercise of delegated legislative authority. We affirm in part and reverse in part.
The Department of Community Affairs (DCA) published proposed amendments to Chapter 9J-5, Florida Administrative Code, in the Florida Administrative Weekly (FAW) on October 2, 1992. The purpose of the amendments was to "enunciate and clarify certain minimum criteria which shall be used to determine whether or not a comprehensive plan or plan amendment is in compliance." 18 Fla. Admin. Weekly 5793-94 (October 2, 1992). On October 23, 1992, both FECI and St. Joe separately filed petitions challenging proposed rules 9J-5.003(140) and 9J-5.006(6) on the basis that each was an invalid exercise of delegated legislative authority in that they were vague, failed to establish adequate standards, and vested unbridled discretion in the DCA, and on the sufficiency of the economic impact statement (EIS).
On August 2, 1993, the DCA and a group of intervenors filed a Motion for Partial Summary Final Order seeking to dismiss the challenge to the EIS on the ground that the petitioners lacked standing under section 120.54(2)(d), Florida Statutes, because they failed to request the preparation of an EIS or advise the DCA of any EIS-related concerns. William Kendrick, the DOAH Hearing Officer (H.O.) presiding over the matter, granted the motion on August 26, 1993. A hearing was held on the merits of the invalid exercise challenge on September 8-10 and 13-15, 1993. On February 18, 1994, the H.O. issued his Final Order, concluding that petitioners failed to demonstrate that the proposed rules were an invalid exercise of delegated legislative authority.
FECI and St. Joe appeal this ruling, arguing (1) their challenge to the EIS should not have been dismissed even though they did not request preparation of an EIS because an EIS had already been prepared when the proposed rules were published; (2) the proposed rules should have been invalidated because they cannot be understood by men of common intelligence; and (3) the proposed rules should have been invalidated because they fail to establish adequate standards and are so vague that they cannot be utilized by those to whom they apply. We agree that appellants' challenge to the EIS should not have been dismissed for lack of standing and reverse and remand, but otherwise affirm.
Turning first to the EIS issue, section 120.54(2)(d), Florida Statutes (Supp.1992), provides, in pertinent part:
No person shall have standing to challenge an agency rule, based upon an economic impact statement or lack thereof, unless that person requested preparation of an economic impact statement under subparagraph (2)(b)2. and provided the agency with information sufficient to make the agency aware of specific concerns regarding the economic impact of the proposed rule, by either participation in a public workshop, public hearing, or by submission of written comments, regarding the rule.[1]
The announcement of proposed rules published by the DCA on October 2, 1992, included a summary of the estimated economic impact of the proposed rules, and listed John Barker at the Bureau of Local Planning as the person to be contacted regarding the economic statement. 18 Fla. Admin. Weekly 5794 (October 2, 1992). After contacting Mr. Barker and requesting a copy of the EIS, FECI and St. Joe received a copy of the EIS on October 8, 1992. They then included in their October 23, 1992 petitions the issues of whether the DCA had prepared an EIS in compliance with section 120.54(2)(6) that accurately and sufficiently analyzed the economic impact of the proposed changes on the public and the regulated community, and whether the DCA had considered the rules' impact on small businesses *360 and the method for reducing that impact. FECI and St. Joe's concerns regarding the EIS were also specifically listed in their petitions as ultimate facts entitling them to relief. In their petitions, Petitioners again stated their concern for the rules' impact on small businesses and then pointed out problems with particular portions of the EIS. FECI also submitted a Memorandum to DOAH on November 6, 1992, in which it quoted the portion of the EIS it found deficient and noted that the EIS failed to meet the requirements of section 120.54(2)(b). We find that these actions were sufficient to fulfill the standing requirements of section 120.54(2)(d). Appellants' request for a copy of the existing EIS constituted a request for the preparation of an EIS under section 120.54(2)(b)2., and the EIS-related information contained within their petitions and memoranda was sufficient to put the DCA on notice of their specific concerns regarding the economic impact of the rule. Therefore, we remand to the Hearing Officer to consider the merits of Appellants' argument as to the sufficiency of the EIS.
We turn next to Appellants' argument that the proposed rules fail to establish adequate standards and are vague, thus vesting the Department with unbridled discretion in reviewing plans. It is a primary precept of constitutional law that "The Legislature may not delegate the power to enact a law, to declare what a law shall be, or to exercise an unrestricted discretion in applying a law." Lewis v. Florida State Bd. of Health, 143 So.2d 867, 875 (Fla. 1st DCA 1962), cert. denied, 149 So.2d 41 (Fla.1963). Although the Legislature may authorize an administrative agency to adopt rules and regulations to enforce a particular law, the rules must fall within fixed, valid limits and must implement the law only within its express general purpose. Id.; see also Barrow v. Holland, 125 So.2d 749, 752 (Fla.1960) (the constitution requires that agency rules include standards to guide regulated persons or entities in complying with the rule and to govern the agency in applying it). Accordingly, section 120.52(8)(d), Florida Statutes, provides that a rule that is vague, fails to establish adequate standards for agency decision, or vests unbridled discretion in the agency constitutes an invalid exercise of delegated legislative authority.
In rejecting this argument, the H.O. stated:
While an analysis in accordance with the rule may require the exercise of professional planning judgment, it is founded on objective criteria established by the rule and objective data supplied by the plan or amendment and its specific data and analysis. While professional planners may legitimately disagree on an issue at any give (sic) time, such is not a deficiency of the rule, but the complexity or vagarity of the problem presented. Should reasonable minds tend to disagree, the issue is subject to review under the provisions of Section 120.57(1), Florida Statutes. Sections 163.3184(9) and (10), Florida Statutes.

In his findings of fact, the H.O. also stated:
In concluding that the indicators and criteria are reasonable, it has not been overlooked that they do not have an established weighting, nor that professional planners could reasonably disagree in their application to a particular circumstance. As to establishing a weighting for each indicator or criteria, the variety of circumstances among local governments and their plans of proposed amendment would foreclose such an approach. As to disagreements among professional planners, such is not a failing of the rule, but the consequence of the diversity or vagary among local plans or amendments, data and analyses and local conditions.
There is competent substantial evidence to support the H.O.'s finding that the proposed rules are not vague and do not vest the Department with unbridled discretion. Thomas Pelham, former secretary of the Department of Community Affairs, testified at the hearing that determining whether a plan discourages urban sprawl was so complex as to make it impossible to create a more specific rule. He stated that the determination of whether a plan fails to discourage urban sprawl does not lend itself to mathematical precision as water quality would. For instance, in determining whether a plan is not in compliance because it includes an area of *361 high density, the planner must look at many factors included in the plan and make an independent judgment. Robert Pennock, Chief of the Department's Bureau of Local Planning, also testified that the rules' definition of urban sprawl does not include a specific number of units per acre because it is impossible to develop a definition that would accurately apply to all Florida counties. Each community is different and what constitutes "low density" in Dade County, for example, would not make sense if applied to Liberty County. According to Pennock, it would be impossible to write a rule that covered every place in Florida, or to develop a rule that would work like a mathematical equation for urban sprawl. Mr. Pennock was unable to describe a step-by-step approach for how Rule 9J-5.006(6) would be applied because the factors listed in subsections (g), (h), and (i) are interwoven and complicated. Maria Abadal, the Department's plan review administrator, also testified that the factors listed in Rule 9J-5.006(6) could not be applied in a mathematical manner, but must be evaluated within the entire context of the plan being reviewed. When asked whether there was a specific policy or agreement as to certain terms used within the rules, Ms. Abadal stated that although many of the terms are not defined, a number of final orders discussing the relevant terms existed.
Florida courts have previously recognized that executive agencies may exercise some discretion without breaching their authority. "The exercise of some authority, discretion, or judgment may be incident or necessary to the performance of administrative or ministerial duties; but such authority, discretion, or judgment is subject to judicial review; and it is not among the powers of government that the Constitution separates into departments." Florida State Bd. of Architecture v. Wasserman, 377 So.2d 653, 656 (Fla.1979) (citing Bailey v. Van Pelt, 78 Fla. 337, 350, 82 So. 789, 793 (1919)). Although the legislature must establish adequate standards and guidelines in delegating duties to an agency, it may not always be practical or desirable to draft detailed or specific legislation. State Dep't of Citrus v. Griffin, 239 So.2d 577, 581 (Fla.1970); Microtek Inc. v. Florida Pub. Serv. Comm'n, 464 So.2d 1189, 1191 (Fla.1985). In that situation, the legislature may transfer subordinate functions to an agency and allow it to administer legislative policy since the agency possesses the expertise and flexibility to deal with complex and fluid conditions. Microtel, Inc., 464 So.2d at 1191.
This Court recently applied these concepts in Ameraquatic, Inc. v. State Dep't of Natural Resources, 651 So.2d 114 (Fla. 1st DCA 1995). There, appellants challenged proposed rules 16C20.0045(2) and 16C-20.005(1)(a)5, among others, arguing that they reserved unbridled discretion in the Department to define and weigh criteria regulating aquatic weed control activities in issuing permits. The court found competent substantial evidence to "support the hearing officer's conclusion that the assignment of specific weight to each criterion [in Rule 16C-20.0045(2)] would be impractical." Id. at 10. A Department administrator had testified that the issuance of permits was site specific and that it was not possible to define the criteria more narrowly because of the many variables involved. Id. at 11. The court used a similar rationale to reject appellants' argument that the criteria in Rule 16C20.005(1)(a)5 should be assigned a weight to be used in determining whether a permit should be issued. Id. at 13.
Indeed, we note that the Department appears to have exerted its best efforts in promulgating rules in an area as complicated as urban sprawl. In affirming an order refusing to invalidate DCA's nonrule policies on urban sprawl because they were not promulgated as rules, we noted with approval the Hearing Officer's statement that the myriad of details involved in applying the urban sprawl rules to an individual plan may preclude rulemaking. Home Builders & Contractors Assoc. v. Department of Community Affairs, 585 So.2d 965, 969 (Fla. 1st DCA 1991). Thus, this Court previously recognized that promulgating these rules would be a complicated matter that may not lend itself to precise rules that may be accurately applied to every plan reviewed by the Department.
*362 Finally, we note that the DCA plan reviewers are not given absolute discretion in determining whether a plan is in compliance with the urban sprawl rules. Mr. Pennock and others emphasized that the Department planners do not apply the rules individually and issue a report on behalf of the Department summarizing their conclusions. Any report issued by the Department is first reviewed by its senior planners to ensure that the planner's recommendation is consistent with Department policy. Before a final decision is made on a local government's plan or amendment, the DCA sends a report to the local government that lists its objections, recommendations and comments, which gives the local government and other affected parties an opportunity to consult with the Department and voice their concerns over any mistakes that may have been made.
Lastly, Appellants argue the proposed rules should be invalidated because laymen working for the local governments for whom the rules were promulgated are unable to understand them. In support of their argument, Appellants cite State v. Cumming, 365 So.2d 153, 155-56 (Fla.1978), where the court held invalid rules promulgated for the issuance of permits because they were based on vague and overbroad standards, and stated: "It is the failure of the Commission to implement through its rules the statute's guidelines that has left the statute to require `the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application....'" Id. at 156 (quoting State v. Wershow, 343 So.2d 605 (Fla.1977)). Appellants' argument must fail. Cumming does not mandate that the proposed rules be declared invalid as vague simply because they cannot be understood by "men of common intelligence." Cumming dealt with a penal statute and, while this test may be appropriate in some administrative contexts, it is inappropriate here. Although it is true that "[t]he requirements of due process are not fulfilled unless the language of a penal statute is sufficiently definite to apprise those to whom it applies of the conduct it prohibits," Bertens v. Stewart, 453 So.2d 92, 93 (Fla. 2d DCA 1984), the rule involved here is not penal. A local government will not be subject to punishment, defined as "[a]ny fine, penalty, or confinement inflicted upon a person by the authority of the law ...," if its plan is found not in compliance with the urban sprawl rules. Black's Law Dictionary 1234 (6th ed.1990). In other words, the fundamental concern of the vagueness doctrine is not threatened here because the consequences of being found out of compliance with the challenged rules is not penal. State v. Rawlins, 623 So.2d 598, 600 (Fla. 5th DCA 1993) ("The fundamental concern of the vagueness doctrine is that people be placed on notice of what conduct is illegal.").
Further, courts have held that when words used in a statute are not defined, they must be construed according to their plain and ordinary meaning, or according to the meaning assigned to the terms by the class of persons within the purview of the statute. State v. Hoyt, 609 So.2d 744 (Fla. 1st DCA 1992). These concepts were applied in State v. Hagan, 387 So.2d 943, 946 (Fla.1980), where the court reversed a trial court's holding that a special law regulating trawling in Charlotte Harbor was vague because it did not define the terms "trawl net" and "trawling operation" and stated: "A statute may satisfy due process requirements even though it contains general terms and does not furnish detailed plans and specifications of the act or conduct proscribed."
Based on the foregoing, the Final Order is REVERSED and REMANDED for a hearing on the merits of Appellants' challenge as to the sufficiency of the EIS, but is AFFIRMED in all other respects.
BARFIELD, C.J., and KAHN, J., concur.
NOTES
[1] 1992 Fla. Laws ch. 92-166, § 4, at 1675.